IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND EDWARD STEELE,

         Petitioner,                       No. CIV S-03-0143 GEB KJM

    vs.                              DEATH PENALTY CASE

STEVEN W. ORNOSKI,
Acting Warden of California State
Prison at San Quentin,

         Respondent.             FINDINGS AND RECOMMENDATIONS

_____/

        Respondent's motion to dismiss came on for hearing October 25, 2005.  Eric

Christoffersen appeared for respondent.  Peter Giannini appeared for petitioner.  The court

ordered supplemental briefs on several issues.  See Oct. 26, 2005 Order.  Those briefs have been

submitted.  Upon review of the motion and the documents in support and opposition, upon

hearing the arguments of counsel and good cause appearing therefor, the court makes the

following findings and recommendations.

I.  Background

        Respondent argues petitioner included many unexhausted claims in his federal

petition.  He seeks dismissal of the unexhausted claims so the court may proceed on a fully

exhausted petition.  Petitioner admits that a number of claims are unexhausted, argues others are

1

1   exhausted, and seeks a stay of these proceedings to permit him to initiate and complete

2   exhaustion proceedings in state court.

3   II.  Exhaustion

4          Respondent identifies a number of unexhausted claims.[1]  Petitioner agrees that the

5   following claims were not raised before the California Supreme Court: 3, 6, 15, 21, 23, 29-32,

6   37, 38, 42, 44-46, 55, 56, and 59-68.  The parties disagree about the exhaustion status of nine

7   claims.  Each of these nine claims is discussed below.

8          A.  Legal Standards

9          The exhaustion of available state remedies is a prerequisite to a federal court's

10  consideration of claims sought to be presented in habeas corpus proceedings.  See Rose v. Lundy,

11  455 U.S. 509 (1982); Carothers v. Rhay, 594 F.2d 225 (9th Cir. 1979); 28 U.S.C. § 2254(b).  The

12  exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts

13  the initial opportunity to correct alleged constitutional deprivations.  See Picard v. Connor, 404

14  U.S. 270, 275 (1971).  A petitioner satisfies the exhaustion requirement by providing the highest

15  state court with an opportunity to rule on the merits of the claim.  Batchelor v. Cupp, 693 F.2d

16  859, 862 (9th Cir. 1982) (citations omitted).

17         The state court has an opportunity to rule on the merits when the petitioner fairly

18  presents the claim to that court.  The fair presentation requirement is met where the petitioner has

19  described the operative facts and legal theory on which his claim is based.  Kelly v. Small, 315

20  F.3d 1063, 1066 (9th Cir. 2003).  The state claim need not be identical to the federal claim.

21  Picard, 404 U.S. at 277-78.  Exhaustion requires only that the substance of the federal claim be

22  fairly presented.  Id. at 278.

23

24         [1]  At hearing and in his supplemental briefing, respondent concedes that claim 11 and
    some subclaims of claims 41 and 50, which he had identified originally as unexhausted, are in
25  fact exhausted.  This court agrees.  In addition, in his supplemental briefing, respondent states
    that exhibits he argued originally were "unexhausted" do not render any of petitioner's additional
26  claims unexhausted.

1    A federal court claim may require exhaustion because it contains either legal

2  arguments or factual allegations not raised in the state court.  If the petitioner did not fairly

3  present the legal basis for the claim to the state court, it is unexhausted.  Generally, it is "not

4  enough that all the facts necessary to support the federal claim were before the state courts . . . or

5  that a somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982);

6  Duncan v. Henry, 513 U.S. 364, 366 (1995).

7    A claim also is unexhausted if it contains new factual allegations that

8  "fundamentally alter the legal claim already considered by the state courts."  Vasquez v. Hillery,

9  474 U.S. 254, 257-58 (1986).  New factual allegations that "simply provide additional

10  evidentiary support for the claim" do not transform the claim and thus do not require exhaustion.

11  Landrigan v. Schriro, 441 F.3d 638, 648 (9th Cir. 2006) (new evidentiary support for prejudice

12  prong of Strickland does not render claim unexhausted).

13    Another aspect of factual exhaustion is the petitioner's ability to investigate and

14  discover facts to support the allegations of his state court petition.  The basis of the exhaustion

15  doctrine is the requirement that a petitioner fairly present his claims to the state court.  Batchelor,

16  693 F.2d at 862.  If the petitioner presented the legal basis for the claim but was unable to make a

17  substantial factual showing because state court procedures did not permit factfinding, then the

18  state court has had a sufficient opportunity to rule on the merits of the claim and the exhaustion

19  requirement should be satisfied.  See Miller v. Estelle, 677 F.2d 1080, 1084 n.9 (5th Cir. 1982)..

20    B.  Analysis of Disputed Claims

21    1.  Claim 5

22    Claim 5 is that the trial court's error in allowing introduction of a prior murder

23  conviction was compounded by the denial of petitioner's motion for separate juries.  Respondent

24  argues that petitioner's state court claim of error regarding introduction of the prior murder was

25  never connected to petitioner's motion for separate juries.  Respondent is correct.  On appeal,

26  petitioner never made a connection between his arguments that (1) the trial court erred in

1   admitting the 1971 homicide; and (2) that the court erred in denying petitioner's motion for

2   separate guilt and penalty phase juries.  Compare Appellant's Apr. 12, 2000 Opening Brief

3   ("AOB"), lodged Sept. 15, 2005, at 40-78, and AOB at 198-210.  Petitioner has raised the two

4   claims made in state court separately (claims 4 and 22); claim 5 was not raised and is not

5   exhausted.

6               2.  Claim 9

7               Claim 9 alleges trial counsel was constitutionally ineffective for failing to call

8   Bob Simpson as a witness in the penalty phase.  Petitioner states that Simpson could have

9   provided evidence about petitioner's difficult childhood and good deeds.  In the state petition,

10  claim VIII alleged ineffective assistance of counsel at the penalty phase.  One aspect of this claim

11  was trial counsel's failure to prepare witnesses to testify.  Mar. 27, 2003 State Habeas Corpus

12  Petition ("State Pet."), lodged Sept. 15, 2005, at 185-189.  In paragraph 405 of the state petition,

13  petitioner specifically pointed out that, although subpoenaed, Bob Simpson was not called to

14  testify because he was drunk.

15              While claim 9 is more thoroughly set forth in the federal petition than it was in the

16  state petition, that is not the standard for exhaustion.  Particularly where, as here, the state court

17  did not grant an evidentiary hearing, it cannot be said that the court did not have a "fair

18  opportunity" to rule on petitioner's claim.  The Ninth Circuit in Chacon v. Wood fleshed out this

19  standard.  36 F.3d 1459, 1468 (9th Cir. 1994), superseded on other grounds by 28 U.S.C. §

20  2253(c).  In Chacon, the petitioner claimed his guilty plea was involuntary because he had been

21  misadvised regarding the possible consequences of such a plea.  In state court, Chacon alleged

22  that his counsel directly induced the guilty plea by providing the translator with the

23  misinformation.  In federal court, Chacon claimed that the interpreter induced the plea by an

24  improper translation.  The Court of Appeals held that this change in factual arguments did not

25  fundamentally change Chacon's legal argument that his plea was involuntary due to

26  misinformation about the possible effects of such a guilty plea.  Here, petitioner does not change

4

1    but adds to the factual support for his claim that counsel failed to prepare witnesses to testify.

2    This additional information does not "transform" petitioner's claim.  Claim 9 is exhausted.

3                     3.  Claim 24

4                     Claim 24 is petitioner's claim of ineffective assistance of counsel at the penalty

5    phase.  The only thing respondent claims is unexhausted here is the allegation regarding

6    counsel's failure to prepare witness Bob Simpson in paragraph 112 of claim 24.  This aspect of

7    claim 24 is repetitious of claim 9.  Therefore, for the same reasons stated above with respect to

8    claim 9, paragraph 112 of claim 24 is exhausted.

9                     4.  Claim 25

10                    Claim 25 is that the prior murder conviction (for the second degree murder of

11   Deborah Cerna) used as a special circumstance and as aggravation was invalid.  Respondent

12   argues two aspects of this claim are not exhausted: (a) petitioner's allegation of insufficient

13   evidence of his mental state for a murder conviction (paragraphs 21-30); and (b) the argument

14   that the admission of the prior conviction was prejudicial, citing the prosecutor's extensive use of

15   the prior conviction during closing argument (paragraphs 41-50).

16                    Petitioner's state court claim, claim IX, bore the same broad title as his federal

17   claim 25:  "Petitioner's Conviction must be Reversed Because the Special Circumstance and

18   Prior Convictions used as Factors in Aggravation were Invalid Convictions Obtained in Violation

19   of Petitioner's Constitutional Rights."  The constitutional rights alleged included rights under the

20   "Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States."

21   State Pet. at 190, ¶ 409.  While petitioner does not attach a "Sufficiency of the Evidence" label to

22   part of this claim, he clearly raised the due process issue by arguing that "petitioner was not

23   guilty of second degree murder."  Id. at 192, ¶ 414.  The reasons set forth were as follows:

24   "Evidence likewise established that the offenses were committed while petitioner did not know

25   or understand the nature and quality of his acts, could not distinguish right from wrong at the

26   time the offenses were committed, and/or did not form the requisite mental states for the charged

1    offenses." <u>Id.</u> at 193, ¶ 417; <u>cf.</u>, <u>Picard</u>, 404 U.S. at 278 (to exhaust, the petitioner need not cite

2    "book and verse on the federal constitution").  Accordingly, paragraphs 21-30 of claim 25 are

3    exhausted.

4             With respect to paragraphs 41-50, in the federal petition petitioner expands on his

5    prior argument that jurors heard details and facts regarding constitutionally invalid convictions,

6    which affected their penalty phase decision.  State Pet. at 197-198, ¶ 428.  The basis of

7    petitioner's claim, that the special circumstance finding was based on a constitutionally

8    unreliable conviction, is the same now as it was in state court.  Paragraphs 41-50 of claim 25 are

9    exhausted as well.

10            5.  Claims 26 and 27

11            These claims allege a <u>Brady</u> violation for the prosecutor's failure to turn over

12   information regarding petitioner's efforts against the Nuestra Familia gang and ineffective

13   assistance of counsel for the failure to investigate and present evidence of petitioner's assistance

14   in the prosecution of Nuestra Familia members.  Respondent argues that all the specific

15   allegations of the information petitioner provided to law enforcement, which are contained in

16   paragraphs 4 and 11 of claim 26, are not exhausted.[2]  Petitioner argues those allegations were

17   contained in exhibits A and B to claim X of the state petition.  Those exhibits were submitted to

18   the California Supreme Court as part of the state habeas proceeding in June 2003.[3]  A review of

19   the exhibits shows that petitioner is correct - the facts alleged in paragraphs 4 and 11 of claim 26

20   were exhausted.

21

22            [2] Respondent argues claim 27 is unexhausted to the extent it relies on these allegations in
     claim 26.
23

24            [3] The parties now agree that exhibits A and B were submitted to the California Supreme
     Court in June 2003.  Respondent has lodged with this court copies of those exhibits (Vol. V to
     the State Pet.).  It is not entirely clear whether respondent still asserts claims 26 and 27 are not
25   exhausted, but respondent notified the court it would not file a substantive response to
     petitioner's supplemental briefing clarifying that Exhibits A and B were submitted to the state
26   court.

6. <u>Claim 41</u>

Claim 41 alleges California Penal Code § 190.3 and the penalty phase instructions violated petitioner's constitutional rights in many respects.  Respondent argues that all or part of eight of the fourteen subclaims to claim 41 were not exhausted.  Petitioner agrees that two subclaims are unexhausted: Subclaim D (trial court's failure to delete inapplicable mitigating factors violated Eighth and Fourteenth Amendments) and Subclaim G (trial court's failure to define mental illness as a mitigating factor and to delete factor (d)'s "extreme" modifier made instructions unconstitutionally vague).   The parties dispute the exhaustion status of six subclaims, discussed below.

a.  <u>Subclaim B</u>

This subclaim is that the instruction given based on section 190.3(a), which directed the jury to weigh separately the "circumstances of the crime" as a factor in aggravation, violated the Eighth and Fourteenth Amendments.   Respondent argues that the Eighth Amendment aspect of this claim is not exhausted.   However, in claim XIV of the state petition, petitioner argued that section 190.3(a) has been used arbitrarily and capriciously by state courts. While petitioner only specifically mentions "due process" in the discussion of section 190.3(a), the remainder of claim XIV frequently refers to the statute's lack of standards as violating both due process and the Eighth Amendment.  <u>See</u> State Pet. at 228-252.  These arguments are reasonably understood as making an Eighth Amendment challenge to section 190.3(a).  Subclaim B of claim 41 is exhausted.

b.  <u>Subclaim C</u>

This subclaim is that the instruction given based on section 190.3(b), which directed the jury to weigh as an aggravating factor the "presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence," is unconstitutionally vague under the Eighth and Fourteenth Amendments.  A review of the state petition discloses no allegation that section 190.3(b) was vague. This subclaim is not exhausted.

### c. Subclaim F

Subclaim F is that section 190.3 and the corresponding jury instruction, CALJIC No. 8.84.1, allowed jurors to engage in an undefined, open-ended consideration of non-statutory aggravating factors in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. Petitioner contends this argument was made before the state court as part of claim XIV, entitled "The State's Death Penalty Statute Fails to Narrow the Class of Offenders Eligible for the Death Penalty. Trial Counsel Unreasonably Failed to Challenge the California Scheme." While petitioner did argue in state court that subsection (a) of section 190.3 allowed prosecutors to argue almost anything as a "circumstance of the crime," he did not make the broader argument made here – that section 190.3 allowed consideration of non-statutory aggravating factors generally.   Subclaim F is not exhausted.

### d. Subclaim H

In subclaim H, petitioner alleges the factors listed in section 190.3 and CALJIC No. 8.84.1 all are unconstitutionally vague and arbitrary and result in unreliable sentences in violation of the Eighth and Fourteenth Amendments.  Respondent argues this subclaim is unexhausted with the exception of the allegations in paragraphs 36 and 37 that the statute is unconstitutional for failing to require findings beyond a reasonable doubt for:  (a) each aggravating factor, (b) any determination that aggravating factors outweigh mitigating factors, and (c) the conclusion that death is the appropriate penalty.   In paragraph 501 of claim XIV of the state petition, petitioner stated, "The purpose of this statute (section 190.3), according to its language and interpretations by both the California and United States Supreme Courts, is to inform the jury of what factors it should consider in assessing the appropriate penalty.  In actual practice, it has been used in ways so arbitrary and contradictory as to violate due process of law." The state petition then goes on to describe in detail the broad definitions of section 190.3(a)'s "circumstances of the crime," and of the special circumstances.  Petitioner never mentions the other aggravating and mitigating factors listed in section 190.3.

1    Paragraph 501 is not sufficient to have put the state court on notice that petitioner

2   was challenging any particular factors in section 190.3 besides factor (a).  Claim XIV asserts that

3   the statutory scheme generally fails to narrow the class of murderers eligible for the death

4   penalty.  That each factor listed in 190.3 is vague and arbitrary is a different claim.  The

5   undersigned finds that subclaim H of claim 41 is not exhausted.

6                    e.  Subclaim K

7                    Subclaim K is entitled: "California's Failure to Provide any of the Penalty Phase

8   Safeguards Commonly Employed in other Capital Case Jurisdictions Violates the Eighth and

9   Fourteenth Amendments."  Respondent alleges this subclaim is exhausted except for the

10   references to the following safeguards: "6) a procedure to enable the reviewing court to

11   meaningfully evaluate the sentencer's decision; and 7) definition of which specified relevant

12   factors are aggravating, and which are mitigating."  Pet. at 401-402 n.75.  In the state petition,

13   petitioner argued that the California death penalty scheme lacked safeguards common to other

14   death penalty schemes.  State Pet. at 243-248.  Petitioner gave examples, such as the lack of

15   requirements of written findings or of unanimity as to aggravating circumstances.  The issue is

16   whether the use of additional examples in the federal petition renders subclaim K unexhausted.

17                    To exhaust a claim, a petitioner must describe both the "operative facts and the

18   federal legal theory on which his claim is based so that the state courts have a 'fair opportunity to

19   apply controlling legal principles to the facts bearing upon his constitutional claim.'"  Kelly v.

20   Small, 315 F.3d 1063, 1066 (9th Cir. 2003) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)).

21   Petitioner's claim here, as it was in state court, is that the California sentencing scheme contains

22   none of the safeguards commonly used by other states to reduce the possibility that the penalty

23   decision will be made arbitrarily and capriciously.  Petitioner does not argue that the California

24   sentencing scheme must contain all the possible safeguards used by other states.  He lists such

25   safeguards as examples of means other states use "to attempt to eliminate the use of

26   unconstitutionally vague penalty phase factors, eliminate death-biased proceedings, eliminate

9

1  arbitrary and capricious death judgments and executions, and make death judgments

2  meaningfully reviewable on appeal." Pet. at 401-402.  Petitioner does not argue that the absence

3  of each safeguard constitutes an independent constitutional violation.

4          Exhaustion as to subclaim K thus is distinguishable from the exhaustion issues in

5  Kelly.  The petitioner in Kelly made broad claims with some specific instances to support them.

6  The court held that the inclusion of new instances of error rendered the claim unexhausted.

7  Kelly, 315 F.3d at 1068-69. For example, the petitioner in Kelly claimed ineffective assistance of

8  counsel.  He alleged in state court that his trial attorney was ineffective for failing to object to

9  prosecutorial misconduct.  The court held that petitioner's federal claim that his attorney was

10 ineffective for failing to file a motion to recuse the prosecutor, based on the same underlying

11 prosecutorial misconduct, was a separate constitutional claim from the failure to object claim.  Id.

12 at 1068 n.2.  Therefore, the failure to file a motion to recuse was not exhausted.  Id. at 1068.

13 Because subclaim K of claim 41 does not allege separate constitutional violations for the

14 California sentencing scheme's failure to include each listed safeguard, Kelly does not control.

15 The addition of facts only renders a claim unexhausted if it fundamentally alters the claim raised

16 in state court.  Chacon, 36 F.3d at 1468.  Petitioner's inclusion of two additional examples of

17 possible safeguards in a footnote to subclaim K does not alter his argument that the California

18 sentencing scheme contains no safeguards to lessen the chance of an arbitrary and capricious

19 death judgment.  Subclaim K of claim 41 is exhausted.

20          f.  Subclaim N

21          Subclaim N is petitioner's allegation of cumulative error for claim 41.  Because

22 some aspects of claim 41 are not exhausted, it follows that subclaim N is, to the same extent,

23 unexhausted.  However, the existence of a cumulative error allegation was raised in state court

24 and may, with respect to the exhausted claims, be raised here as well.

25          7.  Claim 50

26          Claim 50 is that several features of the California capital sentencing scheme

1   violate due process and the Eighth Amendment.  Respondent argues three aspects of claim 50 are

2   unexhausted: subclaim C (descriptions of mitigating factors barred consideration of mitigating

3   evidence), subclaim D (lack of instruction on definition of life without parole), and subclaim E

4   (failure to instruct on weighing of aggravating and mitigating circumstances).  Petitioner simply

5   states that all eight paragraphs of claim 50 are exhausted, with reference to his Opposition to the

6   Motion to Dismiss.  Pet'r's Response to Resp't's Supp. Brief at 3.  In his opposition, however,

7   petitioner argues only that paragraphs 4 (subclaim C) and 6 through 8 (subclaim E) are

8   exhausted.  He does not argue, and this court cannot find that he raised the argument made in

9   subclaim D in state court.  Accordingly, the undersigned finds subclaim D unexhausted.

10          With respect to subclaims C and E, petitioner appears to argue that certain attacks

11  made on the constitutionality of the California capital sentencing statutes and on the instructions

12  were sufficient to give the California Supreme Court notice of other legal challenges to the

13  statute and instructions.  That is not the case.  Subclaim C is that the inclusion in the list of

14  potential mitigating factors of descriptors such as "extreme," "substantial," "reasonably

15  believed," and "moral" rendered those factors unconstitutionally vague.  Pet. at 513.  Subclaim E

16  objects to the judge's failure to include in the instructions the following language from Penal

17  Code § 190.3: "If the trier of fact determines that the mitigating circumstances outweigh the

18  aggravating circumstances, the trier of fact shall impose a sentence of . . . life without the

19  possibility of parole."  Pet. at 514.  The appellate claims petitioner points to allege: (1) failure to

20  instruct that the death penalty must be found beyond a reasonable doubt (AOB, claim XVI), and

21  (2) failure to assign any burden of persuasion, giving the jury no way to determine the

22  appropriate penalty if they were in "equipoise" (AOB, claim XVII).

23          In subclaims C and E, petitioner makes new, specific legal attacks on the

24  California sentencing scheme and instructions.  See Anderson, 459 U.S. at 6; Kelly, 315 F.3d at

25  1068 n.2.  Those subclaims are also unexhausted.

26  /////

1           8.  Claim 69

2           Claim 69 is petitioner's claim of cumulative error for all claims in the petition.

3    Respondent argues it is unexhausted because it relies upon claims new to the federal petition.  As

4    with subclaim N of claim 41, respondent is correct.  Claim 69 is partially unexhausted.

5    III.  Stay/Abeyance Issues

6           It is well established that a federal court may not "adjudicate mixed petitions for

7    habeas corpus, that is, petitions containing both exhausted and unexhausted claims."  Rhines v.

8    Weber, 544 U.S. 269, 273 (2005) (citing Rose v. Lundy, 455 U.S. 509, 518-19 (1982)).  In the

9    past, the courts in this circuit regularly implemented a three-step procedure: (1) allowing a

10   petitioner to remove unexhausted claims from his mixed petition; (2) staying and holding in

11   abeyance the then fully exhausted petition; and (3) when the petitioner had completed the

12   exhaustion process in state court, allowing the petitioner to amend the petition to reinsert the

13   newly exhausted claims.  See Jackson v. Roe, 425 F.3d 654, 658-59 (9th Cir. 2005).   Recently,

14   the Supreme Court considered the issue of staying a mixed petition.  In Rhines, the Court held

15   that stay and abeyance of a mixed petition is available in "limited circumstances" when "the

16   district court determines there was good cause for the petitioner's failure to exhaust his claims

17   first in state court." 125 S. Ct. at 1535.  "Good cause" is not defined.  Case law establishes only

18   that it is something less than "extraordinary circumstances," and that courts should examine the

19   reasons for the petitioner's failure to exhaust.  Jackson, 425 F.3d at 661-62.  Courts have

20   disagreed about whether the "good cause" necessary for stay and abeyance is the same as or

21   "more expansive" than the showing needed for "cause" to excuse a procedural default.  Compare

22   Hernandez v. Sullivan, 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005) (it is "appropriate to

23   look at procedural default case law for guidance in determining whether Petitioner has

24   demonstrated the requisite 'good cause'"), with Rhines v. Weber ("Rhines II"), 408 F. Supp. 2d

25   844, 849 (D. S.D. 2005) ("Supreme Court suggested a more expansive definition of 'good cause'

26   in Pace and Rhines than the showing needed for 'cause' to excuse a procedural default"); see also

12

1    Ramdeo v. Phillips, No. 04-CV-1157 (SLT), 2006 WL 297462, at *6 (E.D.N.Y. Feb. 8, 2006)

2    ("regardless of whether courts analogize 'good cause' to 'cause' for procedural defaults, most of

3    the courts which have thus far engaged in an in-depth analysis of the issue have required that

4    'good cause' arise from something external, and not fairly attributable, to the petitioner"); Riner

5    v. Crawford, 415 F. Supp. 1207, 1211 (D. Nev. 2006) ("the good cause standard applicable in

6    consideration of a request for stay and abeyance of a federal habeas petition requires the

7    petitioner to show that he was prevented from raising the claim, either by his own ignorance or

8    confusion about the law or the status of his case, or by circumstances over which he had little or

9    no control, such as the actions of counsel either in contravention of the petitioner's clearly

10   expressed desire to raise the claim or when petitioner had no knowledge of the claim's

11   existence").  Even if a court finds good cause, however, a stay is inappropriate if the unexhausted

12   claims are "plainly meritless" or petitioner has engaged in "abusive litigation tactics or

13   intentional delay." Rhines, 544 U.S. at 278.

14          Petitioner claims he filed first in federal court because California's timeliness

15   rules are not clear.  If he filed first in state court, he risked having his claims found untimely at a

16   point after the statute of limitations had run.  Application of the untimeliness bar by the

17   California Supreme Court could have rendered his federal habeas claims not "properly filed" for

18   purposes of the statutory tolling provisions of 28 U.S.C. § 2244(d)(2).  Pace v. DiGuglielmo,

19   544 U.S. 408, 413-14 (2005).  His claims may then have been barred by the statute of limitations.

20   Petitioner argues that this uncertainty over California's timeliness rules constitutes good cause to

21   hold his mixed petition in abeyance.

22          Petitioner's position is supported by recent Supreme Court authority.  In Pace, the

23   Court recognized that its holding may be unfair to a petitioner who attempts in good faith to

24   exhaust his state remedies only to "find out at the end that he was never 'properly filed.'" 544

25   U.S. at 416-17.  The Court invited petitioners who are "reasonably confused" about their state's

26   /////

13

1    timeliness rules to file "protective" petitions in federal court to avoid statute of limitations

2    problems:

> A prisoner seeking state postconviction relief might avoid this
> predicament, however, by filing a "protective" petition in federal
> court and asking the federal court to stay and abey the federal
> habeas proceedings until state remedies are exhausted. See Rhines
> v. Weber, ___ U.S. ___, 125 S. Ct. 1528, 1531, 161 L. Ed.2d 440
> (2005). A petitioner's reasonable confusion about whether a state
> filing would be timely will ordinarily constitute "good cause" for
> him to file in federal court. Ibid. ("[I]f the petitioner had good
> cause for his failure to exhaust, his unexhausted claims are
> potentially meritorious, and there is no indication that the
> petitioner engaged in intentionally dilatory tactics," then the district
> court likely "should stay, rather than dismiss, the mixed petition").

10   Id. According to the Court, then, "reasonable confusion" over timeliness rules would

11   "ordinarily" amount to good cause.

12          Recently, a district court examined the few cases in which courts have found

13   good cause based on the Pace "reasonable confusion" test. See Fernandez v. Artuz, No. 00 Civ.

14   7601 KMW AJP, 2006 WL 121943 (S.D.N.Y. Jan. 18, 2006).  First, in Rhines II, the district

15   court's consideration of Rhines on remand, the court found the petitioner's reasonable confusion

16   about whether or not his claims had been exhausted amounted to good cause for failure to have

17   exhausted his unexhausted claims and to stay the petition.  2005 WL 3466015 at *2-4.  The court

18   noted the Supreme Court's comment that the exhaustion doctrine was not intended to

19   "unreasonably impair the prisoner's right to relief." Id. at *4 (citing Rhines, 125 S. Ct. at 1535

20   (quoting Rose v. Lundy 455 U.S. 509, 522 (1982))).  In Smith v. Wolfe and Bartelli v. Wynder,

21   courts found the pro se petitioners had reason to be confused about the states' procedural rules

22   for raising their claims.  Smith, No. 2:04-CV-1010, 2005 WL 2373431 (S.D. Ohio Sept. 27,

23   2005); Bartelli, No. Civ.A. 04-CV-3817, 2005 WL 1155750 (E.D. Pa. May 12, 2005).[4]  The

24

25          [4] Petitioner Bartelli's confusion was "magnified" by the actions of the state court: "In the
     present case, Bartelli was reasonably confused about whether he was permitted to raise the
     unexhausted claims in a PCRA petition given that he had already filed a first PCRA petition and
26   given that under the PCRA issues are waived if they could have been raised by the petitioner in a

1  Smith and Bartelli courts found this confusion was sufficient good cause for a stay of the federal

2  proceedings pending exhaustion.  The Smith court also rejected the respondent's argument that

3  any postconviction action filed by the petitioner would have been untimely, by noting that "the

4  state courts have not yet determined such issue."  2005 WL 2373431 at *6.  In Menzies v. Friel,

5  the court held that the petitioner's counsel's confusion over the timeliness of a state filing was

6  good cause for filing and subsequent stay of a federal petition.  No. 03 CV 0092, 2005 WL

7  2138653 (D. Utah Sept. 1, 2005).

8          As the court pointed out in Fernandez, "[t]his court thus is left to apply the

9  undefined Rhines 'good cause' standard with little guidance from precedent."  2006 WL 121943

10  at *6.  Considering this limited authority, then, was petitioner in the present case correct to file

11  first in federal court before pursuing his state court remedies?  For the reasons discussed below,

12  he undersigned finds petitioner did not err in starting here based on the lack of clarity of

13  California's timeliness rules and the need for identification of unexhausted claims.

14          With respect to timeliness, this court must determine whether any timeliness rules

15  that would have applied if petitioner had sought state habeas review earlier were so unclear as to

16  be "reasonably confusing."  In 2002, when petitioner filed his appellate reply brief before the

17  California Supreme Court, court rules stated:

18          All petitions for writs of habeas corpus should be filed without
           substantial delay.

19
20          1-1.1. A petition for a writ of habeas corpus will be presumed to be
           filed without substantial delay if it is filed within 180 days after the
           final due date for the filing of appellant's reply brief on the direct
21          appeal or within 36 months after appointment of habeas corpus
           counsel, whichever is later.

22
23          1-1.2. A petition filed more than 180 days after the final due date
           for the filing of appellant's reply brief on the direct appeal, or more

24  _____

25  prior state postconviction proceeding but were not raised in the prior postconviction proceeding.
    42 Pa.C.S. § 9544."  This confusion was magnified by the fact that the Pennsylvania Superior
    Court dismissed the claims that Bartelli raised at that time for ineffective assistance of counsel
26  without prejudice to raise them "in a first PCRA petition."  2005 WL 1155750 at *2.

15

than 36 months after appointment of habeas corpus counsel, whichever is later, may establish absence of substantial delay if it alleges with specificity facts showing the petition was filed within a reasonable time after petitioner or counsel (a) knew, or should have known, of facts supporting a claim and (b) became aware, or should have become aware, of the legal basis for the claim.[5]

1-2. If a petition is filed after substantial delay, the petitioner must demonstrate good cause for the delay. A petitioner may establish good cause by showing particular circumstances sufficient to justify substantial delay.

1-3. Any petition that fails to comply with these requirements may be denied as untimely.

1-4. The court may toll the 180-day period of presumptive timeliness for the filing of a capital-related habeas corpus petition (which begins to run from the final due date to file the appellant's reply brief in the appeal) when it authorizes the appellant to file supplemental briefing. The court will not toll before the 180-day presumptive timeliness period begins to run or after it has finished running.

Supreme Court Policies in Cases Arising from Judgments of Death, Policy 3;  Standards Governing Filing of Habeas Corpus Petitions and Compensation of Counsel in Relation to such Petitions.  Facially, the California rule lacks certainty in several respects.  First, the rule creates a "presumption" of untimeliness, which may be rebutted by showing counsel filed within an unspecified "reasonable" time after learning new facts or law supporting the claim.  Second, a petitioner has an opportunity to make an undefined showing of "good cause" for the delay, which presumably would permit consideration of the petition.  Finally, a petition that does not meet the

_____

    [5] Standards 1-1.1 and 1-1.2 were amended effective July 2002 to extend the filing period from 90 days to 180 days.  Because petitioner's appellate reply brief was filed on February 14, 2002, it appears this new 180-day standard would apply. See Official Note No. 1 to Policy 3 ("The amendments to standards 1-1.1 and 1-1.2, effective July 17, 2002, changing '90 days' to '180 days,' shall apply to all petitions for a writ of habeas corpus arising from a judgment of death that were pending before the Supreme Court on July 17, 2002, and to all such petitions filed after that date.").  The standards were also amended in November 2005 to change 24 months to 36 months.  This amendment applies "to all petitions for a writ of habeas corpus arising from a judgment of death that were pending before the Supreme Court on November 30, 2005, and to all such petitions filed after that date."  Official Note No. 2 to Policy 3.  Petitioner's state appellate counsel was also appointed to be his state habeas counsel in December 1997. Because the appellate reply brief was not filed until 2002, the applicable timeliness rule is the 180-day rule.

1   requirements of sections 1-1 or 1-2 "may" be denied as untimely; this section 1-3 appears to

2   create the possibility of other, unspecified exceptions to the rule.

3           In Dennis v. Brown, the court examined a prior version of California's timeliness

4   rule that is similar to the one relevant to the present case.  361 F. Supp. 2d 1124, 1132-34 (N.D.

5   Cal. 2005).  The California Supreme Court denied Dennis's claims as, among other things,

6   untimely.  The federal district court considered whether the procedural default doctrine required

7   it to deny the petitioner's claims without considering the merits.  The procedural default doctrine

8   is based on considerations of comity and federalism.  Coleman v. Thompson, 501 U.S. 722, 730

9   (1991).  It states that a federal court generally "will not review a question of federal law decided

10  by a state court if the decision of that court rests on a state law ground that is independent of the

11  federal question and adequate to support the judgment."  Id. at 729.  The Dennis court sought to

12  determine whether the California courts had applied the timeliness rule regularly and consistently

13  enough to show it was "adequate to support the judgment" and justify federal court deference to

14  the rule.[6]  The court found the respondent failed to show that California's rules barring capital

15  habeas petitions as untimely are regularly and consistently applied.

16          The Dennis court noted that not only has the California court issued very few

17  opinions on the issue of timeliness but those opinions do nothing to clarify the rules:

18          In Clark, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729,
            the court found the petition at issue, containing four claims, to be
19          untimely and accordingly denied it. In In re Gallego, 18 Cal.4th
            825, 77 Cal.Rptr.2d 132, 959 P.2d 290 (1998), and in Robbins, 18
20          Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, the court explained
            why it found one claim out of thirty-five and one claim out of forty,
21          respectively, to be untimely; the court disposed of all seventy-five
            claims for various reasons, including untimeliness with respect to
22          almost [all] of them, without explaining why some claims were

23  _____

24          [6] A state's application of a procedural rule will bar federal review where the state rule is
    "well-established and consistently applied" at the time of the petitioner's purported default.
25  Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003).  "Only a 'firmly established and regularly
    followed state practice' may be interposed by a state to prevent subsequent review by this Court
26  of a federal constitutional claim."  Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quoting James
    v. Kentucky, 466 U.S. 341 (1984)).

1
2
3
4
5
6
7

> timely and others were not. One justice in <u>Gallego</u> described the
> court's procedural rules as "a Byzantine system of procedural
> hurdles, each riddled with exceptions and fact-intensive
> qualifications." 77 Cal.Rptr.2d 132, 959 P.2d at 302 (Brown, J.,
> concurring & dissenting). Finally, in <u>In re Sanders</u>, 21 Cal.4th 697,
> 87 Cal.Rptr.2d 899, 981 P.2d 1038 (1999), a fractured court gave
> various reasons why it found a petition (in which the number of
> claims was not indicated) to be timely; no opinion in the case
> commanded a majority of the court. Indeed, the author of <u>Clark</u>
> himself declared that <u>Sanders</u> "contradict[ed]" the court's
> untimeliness rule. 87 Cal.Rptr.2d 899, 981 P.2d at 1061 (Baxter, J.,
> dissenting). According to another justice in that case, the court's
> application of the untimeliness bar has been "arbitrary and
> capricious." <u>Id.</u> at 1057 (Mosk, J., concurring).

8
9
10
11
12
13

<u>Id.</u> at 1133-34. The cases reviewed in <u>Dennis</u> show anything but a consistent approach. Further, they represent a very small fraction of the total number of capital habeas claims the court has considered for timeliness. The <u>Dennis</u> court conducted a "comprehensive examination of the California Supreme Court's published and unpublished post-<u>Clark</u> capital habeas opinions and orders from 1993 to the present to determine whether any might support Respondent's position [that the timeliness rule is consistently applied]. None did so." <u>Id.</u> at 1134 n.13.

14
15
16
17
18
19

This court agrees with <u>Dennis</u>. California's timeliness rules lack clarity and it is understandable that petitioner in the present case would want to file a protective federal petition before filing a state court petition that may or may not be considered timely filed. After <u>Pace</u>, this lack of clarity establishes good cause for the stay of the federal petition while petitioner exhausts his new claims in state court.

20
21
22
23
24
25
26

Respondent argues <u>Pace</u> should not apply because here, unlike <u>Pace</u>, petitioner does not have a pending state petition. Respondent argues that petitioner's decision to file the unexhausted claims first in federal court bars the application of <u>Pace</u>. The basis for respondent's reasoning is unclear. First, respondent's suggestion that petitioner should have raised the clearly unexhausted claims in state court previously does not promote an efficient or desirable way to proceed. Rather than engage in piecemeal litigation, it made sense for petitioner to seek identification of the unexhausted claims so he may raise them in one state habeas petition.

1   Moreover, the district court in <u>Rhines II</u> held that uncertainty over the exhaustion status of claims

2   was good cause for a stay.  2005 WL 3466015 at *2-4.  Second, respondent admitted at the

3   hearing that petitioner has not been dilatory in filing these claims.  This court agrees.  There is no

4   indication petitioner has been intentionally dilatory or has engaged in "abusive litigation tactics."

5   Because, at this point, it is not clear that petitioner's claims are plainly meritless, and respondent

6   does not argue that they are, all the factors necessary for application of the <u>Rhines</u> rule of stay

7   and abeyance are present.

8          Petitioner should not be expected to gamble by bringing all of his unexhausted

9   claims to state court before raising them here.  Nor should he be expected to further gamble by

10  attempting to determine which claims in fact are unexhausted.   Filing the mixed petition was

11  appropriate in this case.  This court recommends it be stayed pending exhaustion of state

12  remedies.[7]

13         For the foregoing reasons, IT IS HEREBY RECOMMENDED that respondent's

14  September 9, 2005 motion to dismiss be granted in part and denied in part as follows :

15         1.  Petitioner's claims 3, 5, 6, 15, 21, 23, 29-32, 37, 38, 41C, 41D, 41F, 41G, 41H,

16  41N (to the extent it relies upon unexhausted claims), 42, 44-46, 50C, 50D, 50E, 55, 56, 59-68,

17  and 69 (to the extent it relies upon unexhausted claims) be found unexhausted and the remaining

18  claims in the petition for writ of habeas corpus be found exhausted;

19         2.  These proceedings be stayed and held in abeyance to permit petitioner to

20  exhaust his unexhausted claims; and

21             a.  petitioner be required to file any state exhaustion petition within thirty

22  days of the court's final order on the motion to dismiss and notify this court when he has done so,

23

24      [7] Because this court recommends the mixed petition be stayed, it is not necessary to reach
    petitioner's alternative request that the court permit dismissal of unexhausted claims before
25  staying the case under the three-step procedure outlined above.  <u>See</u> <u>Jackson</u>, 425 F.3d at 661
    ("[W]e leave for another day the question of whether the stay standard announced by the
26  Supreme Court in <u>Rhines</u> applies to our three-step stay-and-abeyance procedure.").

1          b.  petitioner file reports on the status of the state proceedings every sixty

2   days thereafter, and

3          c.  petitioner notify this court within ten days of the state court's resolution

4   of his state proceedings.

5          These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED:  May 18, 2006.

14

15
                                          _____
16                                        UNITED STATES MAGISTRATE JUDGE

17

18

19  steelemtntodismiss.fr

20

21

22

23

24

25

26